The next case today is Brandon Barth et al. v. City of Cranston et al. Appeal number 21-1632. Attorney Roy, please go ahead and introduce yourself on the record to proceed with your argument. May it please the court, Edward C. Roy here on behalf of the plaintiff's appellants. Mr. Chief Judge, I would like to reserve two minutes for rebuttal, please. You may. We're here on appeal based upon the district court's granting of summary judgment against the plaintiffs. The standard of review on legal issues well established by this court is de novo, and this court will evaluate the factual issues in a light most favorable to the appellants, drawing all reasonable inferences in favor of the plaintiffs in this case. The facts that we feel in the record that favor reversing the district court's grant of summary judgment are several. First, I think it's noteworthy that this case is based upon the entry of a consent judgment in favor of Matthew Josephson. That judgment was entered without any notice to a participation by the plaintiffs in this case. That consent judgment clearly negatively affected the plaintiff's seniority rights. The district court did find that fact, a finding we agree with. The focus of the most significant of our claims in this case, the claim I want to deal with first, is the duty of fair representation owed to my clients by the IBPO. And we are focusing on post-confirmation bargaining. And before I get into the meat of that argument, it's important, I guess, to speak about what had happened regarding the initial grievance filed. The district court, in its opinion, seemed to focus on the union's initial decision to not pursue a grievance on behalf of my clients. And when you look at what we allege in our amended complaint, our fourth amended complaint, we didn't argue that that initial decision to not file a grievance was actionable. We focused on what happened after a class action grievance was filed on behalf of my clients. And we feel the union had a duty, after filing that class action grievance, to bargain in a meaningful way on behalf of my clients. It's clear that, based upon the testimony of retired union president Robert Santagata, that the class action grievance was meant to include my clients whose seniority was negatively impacted by the Josephson consent judgment. In fact, at the arbitration stage, the union argued that other members of the union had been negatively impacted by the consent judgment. And one of the reasons that there was a negative impact was because the city violated the recognition clause of the collective bargaining agreement by dealing directly with a member to the detriment of other members, including my clients. And further on during the litigation, the city had objected to the arbitration award and had sought to vacate the award. And the union had moved to confirm the award. And in a written decision, a Superior Court judge in Rhode Island, Judge Stephen Nugent, had granted the union's motion to confirm and denied the city's motion to vacate. And he made a finding, and it's reflected at page 11 of his decision in the appendix at page 60, that the agreement to reinstate Josephson necessarily impacts the wages, seniority, and shift assignments of other members. It's significant that neither the union nor the city appealed that decision, which confirmed the award, meaning that it's now a court order. As I mentioned a moment ago, when this case was in Superior Court in Rhode Island, we took the deposition of Robert Santagata, who testified that the plaintiffs were wronged by having their seniority displaced. And he also testified that the plaintiffs were within the scope of the class on behalf of the union. Mr. Roy, I don't mean to be rude, but first, we've read the briefs. Second, we understand that your clients were, their seniority rights were negatively affected by the operation of this consent judgment. So I think you should focus, or I would appreciate it if you would focus on what you think that the union did wrong. What action they took that was arbitrary or in bad faith so as to ground a suit for breach of the duty of fair representation. Certainly, Judge Selya. What had happened was, during the year 2000, in February of 2020, I'm sorry, 2020, I had written a letter to the union president, and it's contained in the appendix and it's referenced in our briefs, Four minutes remaining. Four minutes. asking them to bargain on behalf of my clients. And the union president wrote a letter back saying they would bargain, but they had already determined that they had bargained in a meaningful way, and therefore they were going to join in the city's motion for summary judgment in Superior Court. And we believe that the duty of fair representation requires them to do more than act in a perfunctory manner. And we cited the case of Vaca versus Sipes Supreme Court decision that is cited in our briefs, which holds that a perfunctory handling of a grievance can give rise to a claim for the duty of fair representation. So by not bargaining, and by saying that even if they were bargaining, they were going to join in a summary judgment motion against us, that constitutes looking at the facts in a light most favorable. But they said that the reason they gave was that they had already bargained in a meaningful way, and what's the evidence on that point? Is there any evidence that that was a bad faith reason or an arbitrary reason, that their prior bargaining had been somehow in dereliction of their duty? The evidence of that, Judge, is that we were completely shut out of that. There's no evidence of what they did. We had asked to be included in the process, and we were completely shut out. That letter back from counsel was the first that we had heard that there had been any bargaining on behalf of our clients. In fact, the request that I made by letter in February of 2020, the reason I made that request is I was unaware that the union and city had bargained regarding my clients. So it goes to the issue of a meaningful approach to the bargaining and a meaningful handling of the bargaining, a bargaining at a meaningful time. And because we were completely shut out, Judge, because that alleged bargaining process was completely opaque, that gives rise to a VACA v. Sipes claim for perfunctory handling of the grievance. And I think it's also meaningful, Judge, that in the district court opinion, the district court didn't focus on the post-confirmation bargaining at all. The district court focused almost solely on the issue of the grievance. What's the argument? What was left to bargain post-confirmation? Well, when you look at what Judge Nugent mentioned in his decision, Your Honor, he mentioned, and again, this is not appealed, that the agreement regarding Josephson impacted the wages, seniority, and shift assignments of other members. So what was left to be bargained was whether or not my clients lost overtime opportunities, whether they had shift assignment opportunities that were taken away from them, or whether they had lost any of the other impacts of seniority. But the union's position was that it already had bargained on that issue generally, and there was, in effect, there was nothing it could do about the court judgment. And the reason we disagree about that, Judge, is when you look at the factors in the Taylor v. Strozl decision written by Judge Ruth Bader Ginsburg, we took the position that my clients should not have had their seniority taken away, that there was no issue preclusion based on the consent judgment, because if you look at all of the six factors... But that, I think, goes to the question Judge Selye initially asked you, which is you would have to show that in light of all of that complexity, the decision they made not to do further bargaining post-confirmation was arbitrary rather than just a reasonably debatable choice. I guess I haven't yet heard you explain why it wasn't just, you know, they see it one way, you see it another way type of issue, and instead an issue where they were in bad faith or arbitrary. The reason that it's arbitrary, Your Honor, is that, as I mentioned, I wrote to the... No, but, in other words, you say they were just perfunctory. But perfunctory means, you know, they made no effort, and they had no reason to make no effort. Well, here they gave a reason to make no effort, which is we had already gone through this, and then there's a confirmation order that we can't do anything about. That's why we're not going to go back and keep going at this. So that's not perfunctory for no reason. That's an explained decision that they made the effort. They don't see that it's likely to change. They don't see a good reason why it would. You then say, well, that was a wrong assessment on their part, and maybe it was, but that doesn't show that it was an arbitrary decision. It might just show it was an incorrect one. I think the reason that it's arbitrary, Your Honor, is I mentioned the Taylor versus Sturgill factors, which speak to whether or not, essentially the union and the city made the argument that the consent judgment was game over, so to speak, that it was an issue preclusion regarding my client's entitlements and seniority. And what we argued in the district court and argued in our brief in this court is that when you look at all those factors, my clients should not have been bound by the consent judgment, and it was pretty clear-cut that they were not participants. It was 100% apparent they weren't participants in the process of litigation. Well, you tell me if I have it wrong. I think maybe I understood them to be saying something slightly different, which is that we bargained on your behalf earlier. Then this word comes down. We can't do anything about that particular word, and we've already been through whether we could do anything for your clients, and it was determined we couldn't. So what has changed now? Nothing's changed in your favor that would provide a new reason to bargain. But what's wrong with that? That's not an issue preclusion point. That's just a point that we can't upset the order, which is affecting your rights. We already bargained about whether we could protect your rights. We can't. So what's the reason to go back and do it again? That's not a preclusion point. What the city and the union both said, Judge, is that they cannot do anything about the consent judgment. So that's why I focused on issue preclusion, because the way this collective bargaining agreement works is seniority is based upon your time actually working in a post. And clearly this Josephson individual did not work for nearly three years as a sergeant when my clients all had accumulated. So the consent judgment, had that not existed, my client's seniority would have been intact. And what we argued was that under the Taylor versus Sturgill factors, there was an attack available on the consent judgment. And the arbitrariness is that. That's time. I would reserve at this point. Anything further from the panel? No. Thank you. Thank you. At this time, if attorney, I afraid he would please unmute her audio and video and introduce herself on the record to begin. Good morning. May it please the court. Carly, I afraid he on behalf of the international brotherhood of police officers, local 301, as well as Sergeant Matthew Josephson, who was named individually, your honors, the union's position in this case has been consistent. It is grounded in settled law applicable to claims for breach of the duty fair representation, as well as the standard applicable to summary judgment. And that is that the sergeant's claim simply cannot survive summary judgment because they have failed to present substantial or really any evidence that any action taken or not taken by the union with respect to their complaint about loss of seniority was based on discrimination or made in an arbitrary fashion or predicated on bad faith. While the sergeants complained that the union did not seek restoration of their seniority rights after the 2016 consent judgment, we have still never heard any evidence to generate a dispute of fact about the reasons why the union did not advance that position. And that, as you know, is the central inquiry in a duty of fair representation case. Only when there is a material dispute about the reasons for the union's action would a jury trial be warranted. And here it has never been disputed that the reason why the union did not do what these particular members wanted was because they determined that to do so would have conflicted with the consent judgment. And so despite this fact that this has been a very long standing matter, there just never has been any generation of evidence to dispute that being the reason. It's clear that the union wanted to help the sergeants, but believed that its hands were tied by the consent judgment. And today, and in the brief, the sergeants say the union was wrong, that there were options for attacking the consent judgment. But again, as Chief Judge Barron noted, the inquiry in a duty of fair representation case is not about whether the union was right or wrong. Maybe the union was wrong, which of course I don't think so. But even if it was, it would not give rise to a valid DFR claim because we still don't have evidence that there was some other motive. The record just doesn't contain anything like that. And if we turn to the sergeant's primary argument about this post-confirmation bargaining, I think it's important to just kind of straighten that out a little bit. In terms of what the union's obligation was at that point, the court is correct in that we had already requested bargaining pre-consent judgment, and that took place. We had requested bargaining post-consent judgment. We were denied that opportunity. And then we had to go through the arbitration and the confirmation process to get to the point where we would then be essentially implementing the award. And when you're implementing the award, obviously we're focused on what's in the award. And to be clear, the award did not generate any obligation to bargain over the sergeant's seniority. In fact, the arbitrator recognized that our position that we couldn't was probably right. And she did not say bargain over sergeant's seniority as a result of my award. The superior court decision did not generate an obligation to bargain over the sergeant's seniority. What came out of the award were the items that the court and that the arbitrator thought we could bargain over, which was the issue of should that position that was vacated by Matthew Josephson be filled? We needed to meet and make sure that was going to happen. We needed to meet and make sure, or to discuss anyway, whether that 20th sergeant position would remain permanent or whether it would be removed through attrition. But to be clear, nothing that we could do or did do was going to get the sergeants the relief they wanted, which was always to have Sergeant Josephson go to the bottom of the sergeant's seniority list. We bargained over the things we thought we had the opportunity to do so. With respect to the letters that were exchanged, the union reaching out to the sergeants to check to see whether there was in anything that we could do separate from the restoration of their seniority after the decision of the Superior Court. That doesn't generate an obligation to do anything. This lawsuit already existed. The sergeants are already suing for breach of the duty of fair representation. I'm reaching out to say, Hey, listen, I'm going to be working on the implementation of this award. Am I missing anything? Is there anything else that I can ask for? And what I got back for was, number one, we want our seniority, but we know you're not going to be able to get that. And so instead, we'd like money. We would like damages for the seniority violation. Well, that is what this lawsuit is about. And the union certainly didn't have an obligation to seek those damages as part of a post confirmation process. Thank you. I think you're on. Okay.  I appreciate it. Thank you, attorney. Please go ahead and mute your camera and your audio. And attorney, Bama, please introduce yourself on the record to begin. Vicki Joe Bama. May it please the court. District court correctly granted summary judgment on the two counts against the city, one for alleged breach of contract and one for alleged violation of the takings clause. It's very well established by now that in order to, to, for these individual employees to serve, to sustain a claim of breach of the collective bargaining agreement, they must first establish that the union had failed in its duty of fair representation. I think on the record shows that the, the, the, the, the appellants will not be able to meet that hurdle. As Ms. These different, these appellants, the model of fair representation, they bargain post, post consent, consent order. They brought in, brought a grievance. They continue to bargain about the effects of their alleged lack of seniority. So I don't think that is a, that is not going to be getting over the fair representation hurdle is how they are, is the only way that they can get to the breach contract issue since they had, did not get, get over the fair representation hurdle. Accordingly, they are not going to be able to get to the breach of contract hurdle or the breach of contract. So the lack of the inability to show a lack of fair representation was fatal to the breach of contract. Then we get to the, the second part of this, which is the takings clause issue. And I believe that the, the district court had correctly granted summary judgment on that issue. The takings clause may protect vested property interest arising from contract. However, the takings clause is not a source of contractual or property rights itself. You cannot use the takings clause to give yourself superior property rights than you had in the first instance. But that's exactly what the appellants are trying to do by constitutionalizing a dispute arising out of a collective bargaining agreement. What's the city's position on the district court's rationale on the takings clause? I believe that the position was entirely correct. First of all, I believe the district court noted that there's... You agree with the proposition that, that when, when a government takes property for the use of a third person, that's not a takings clause violation? Well, the takings clause prevents the takings for a public reason. And the whole gravamen... So, so the, so the city can use eminent domain to take my house and give it to a developer to build a shopping center? And I don't have a takings clause claim? Well, it would depend on the reason why the property had been taken. But they wanted to help the developer out. Well, I think there have been cases where, well, no, I don't think just purely for helping the developer out, but I believe there has been case law on that, where there was some kind of economic development for the city as a whole. What other rationale, apart from the district courts, do you have that this isn't a takings clause claim? Well, there's another piece to it, and that is whether or not there was ever really a vested contractual right to begin with. That may be a different story. Yes. Yes. You cite Hoffman for that proposition, and Hoffman is really distinguishable. Do you have any other authority? Yes, I do. I have about 50-plus years of authority going back to the 1950s, which would tell you that seniority rights and contract do not vest. In fact, the appellants never come up with authority for the idling concept that seniority rights and collective bargaining agreement vest. He tries to fill that gap by pointing to cases involving pensions, but pensions are very different. Pensions are like Rhode Island has certainly evolved. Pension law has evolved from the concept that this was a benefit or gratuity to the idea that it is a kind of deferred compensation. It's pretty much your wage packet, and to that extent, yes, he could certainly argue that a contractual right to a pension might be a vested property interest. However, since the 1950s, in the case of Ford Motor Company versus Hoffman, it was made very clear there is no vest. Seniority rights do not vest, and I have provided authority going back into this century that shows that there is no evolution or change. Thank you. Thank you. Thank you, Attorney Behman. If you could please mute your audio and video. Attorney Roy, if you could just reintroduce yourself on the record to begin for your two-minute rebuttal. Certainly, Edward C. Roy on behalf of the plaintiffs and the appellants. If I could turn briefly to address Judge Selye's comments regarding the takings clause. When you look at the collective bargain agreement as a whole, it's clear that seniority is a significant component within the agreement, and it's also clear in the city I don't think will disagree with this. The agreement itself can't be changed except by agreement of the parties and by ratification by the council. But, Mr. Roy, you also have a further problem on the takings clause claim, because here the city of Cranston is acting not as a sovereign but as an employer. So you've got a line of cases like our 2005 decision in Redondo Borges that says that there can't be a takings clause violation when a municipality or state acts in that capacity. I understand that, Judge. But I think that what buttresses the plaintiff's claims here is one of the decisions from the Supreme Court that we cited, U.S. Airways v. Barnett, which says that seniority systems take effect, they trump, if you will, a consent judgment or a disability accommodation. So in my view, that provides support for the idea that these seniority rights, they did vest, and that they're important and can't be taken away arbitrarily. Yeah, but what I'm saying is that even if they are property, the takings clause doesn't apply. You may have other remedies, but the takings clause doesn't apply when the municipality acts as they did here in its capacity as an employer rather than as a sovereign. That's what our case law and the case law of other circuits says. Based on that, Your Honor, I would respectfully rest on our brief. Unless the court has any other further questions. Thank you very much. Thank you. That concludes argument in this case.